FILED

2026 Jul-13  AM 11:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHELLE R MILLS,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:26-cv-711-ACA** |
| | ] | |
| **MERCEDES-BENZ U.S.** | ] | |
| **INTERNATIONAL INC.,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Michelle Mills, proceeding *pro se* and *in forma pauperis*, filed this lawsuit against her former employer, Defendant Mercedes-Benz U.S. International, Inc. ("MBUSI"), alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (Doc. 1). The court previously reviewed the complaint, as required by 28 U.S.C. § 1915(e)(2)(B)(ii), and determined that it stated a claim for disability discrimination under the ADA but it did not state a claim for sex discrimination under Title VII or retaliation under either the ADA or Title VII. (Doc. 8). The court therefore ordered Ms. Mills to show cause why the court should not dismiss the sex discrimination and retaliation claims. (*Id.*).

Ms. Mills responds that the court should not dismiss any of her claims. (Doc. 11). In support, she alleges additional facts not included in either her complaint or her charge with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 11 at 1–8). The court may not consider those allegations in evaluating the sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b) (d); *cf. Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief . . . ."). However, Ms. Mills requests that if the court finds it necessary, the court grant her leave to amend her complaint to incorporate these allegations. (Doc. 11 at 9). Give Ms. Mills's *pro se* status, the court therefore construes her response as a motion to amend the complaint.

Dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as a dismissal under Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Under that standard, the court must dismiss the case if the plaintiff fails to plead "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1.  Facts

Taking as true the allegations in Ms. Mills's complaint and EEOC charge, she began working for MBUSI in March 2021. (Doc. 1 at 2). MBUSI was aware that Ms. Mills has "a history of cancer, [post-traumatic stress disorder ("PTSD")], and Autism Spectrum Disorder." (*Id.*). Because of her disorders, MBUSI allowed her to work from home three days a week. (Doc. 7 at 3). At an unclear time, Ms. Mills's coworkers and manager pressured her into switching her medical care to "onsite corporate doctors" who could not provide the services she required, forcing her to "navigate complex provider restrictions" that triggered her PTSD. (Doc. 11 at 3).

At some point during her employment, Ms. Mills publicly expressed "her support for the LGBTQ+ community," mentioned family members who are LGBTQ+, and revealed "that she has considered her own identity in the past," after which a manager told her that he "doesn't believe in that." (*Id.* at 2). In June 2024, a coworker made "public, derogatory statements targeting Pride Month." (*Id.* at 4). Several months later, Ms. Mills confronted that coworker about the hostility with which he treated his wife "in the open office environment." (*Id.*). After telling her coworkers that management needed to intervene (*id.*), her coworkers and managers began treating her poorly (doc. 11 at 1–2).

In October 2024, Ms. Mills's manager required her to write an article about her history of breast cancer for a department newsletter despite her objection that the

3

article would trigger her PTSD, a prediction that came true the next month. (*Id.* at 2–3, 5). Ms. Mills then sought to update the human resources system with information about her disabilities but found that she could not edit the information herself. (*Id.* at 5). MBUSI did not respond to her requests for "a formal workplace accommodation document." (*Id.* at 5). Ms. Mills's independent search revealed a "Flexible Work Form" that included the option to work remotely and use an "adjusted work schedule." (Doc. 11 at 5–6).

In December 2024, Ms. Mills "called out" her manager for violating the Fair Labor Standards Act. (*Id.* at 4). The next month, MBUSI altered the "Flexible Work Form" to remove the remote work option. (*Id.* at 6). Also in January 2025, Ms. Mills found that her coworkers and managers began ignoring or interrupting her during meetings. (*Id.* at 6). Her coworkers and managers gave her conflicting instructions about how to do her work, and when she requested clarification, they ignored her. (Doc. 11 at 7). MBUSI also did not give Ms. Mills access to a server that she needed to do her work. (*Id.*). When she requested instructions about how to access the server, her manager ignored her and removed her from her team's group chat. (*Id.*). Her managers told her not to contact or report these issues to human resources. (*Id.* at 8).

In May 2025, a coworker, William McCallum, called Ms. Mills to ask if she was going to come into work that day and inquired into her "condition and treatments," making her "feel uncomfortable and untrusting of him." (Doc. 7 at 3).

In June 2025, MBUSI told her that she could telework only once per week. (*Id.*). But she continued working her schedule of two days in the office and three days at home. (*Id.*). At some point in June 2025, Ms. Mills filed a complaint about "local management's ongoing actions toward [her] and explicit directives blocking access to local Human Resources" with MBUSI's legal department. (Doc. 11 at 8).

Also in June 2025, Ms. Mills was assigned to work on a project with Mr. McCallum. (Doc. 7 at 3). This prompted a verbal altercation when Ms. Mills told her manager that she did not feel comfortable working with Mr. McCallum and "requested time to heal before" working with him. (*Id.*). The manager told her she had to work with Mr. McCallum and "spoke to [her] as though he did not believe that working with [Mr. McCallum] would continue to trigger [her] condition." (*Id.*). Later that day, a human resources representative informed Ms. Mills that she was being suspended pending an investigation. (*Id.*). In July 2025, MBUSI terminated her, citing "unbecoming conduct." (Doc. 7 at 3).

2. Discussion

Ms. Mills's proposed amended allegations do not remedy the deficiencies in her claims of sex discrimination or retaliation. The court will address the claim of sex discrimination first, followed by the claims of retaliation.

### a. Sex Discrimination

Title VII prohibits an employer from discriminating against an employee "because of" the employee's sex. 42 U.S.C. § 2000e-2(a). Ms. Mills makes several arguments in support of her assertion that MBUSI discriminated against her based on her sex. (Doc. 11 at 1–3). First, she asserts that a male coworker treated his wife poorly and that, after she confronted him about his behavior, her coworkers and managers treated her poorly too. (Doc. 11 at 1–2). But even taken in the light most favorable to Ms. Mills, this allegation shows only that her coworkers and managers treated her differently because she opposed a coworker's behavior, not because of *her* sex. *See* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of *such individual's* . . . sex . . . .").

Second, Ms. Mills asserts that her public support for the LGBTQ+ community and disclosure that "she has considered her own identity in the past," followed by her manager's statement that he "doesn't believe in that," is sufficient to state a claim for sex discrimination. (Doc. 11 at 2). But Ms. Mills does not explain what actions anyone took toward her that affected her "compensation, terms, conditions, or privileges of employment" as a result of her disclosures. (*See id.*); 42 U.S.C. § 2000e-2(a)(1).

Finally, Ms. Mills argues that her coworkers' and managers' actions in pressuring her to write an article about her history of breast cancer and to use MBUSI's "onsite corporate doctors" amounted to sex discrimination. (Doc. 11 at 2–3). But these allegations appear to relate to her disabilities, not her sex. Although she asserts that she has a "highly gendered medical history" (*id.* at 3), men can also suffer from breast cancer, albeit rarely, and from PTSD. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute . . . ."). These health conditions are not "inextricably bound up with sex." *Bostock v. Clayton County*, 590 U.S. 644, 660–61 (2020); *cf. id.* at 660 ("[I]t is *impossible* to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.") (emphasis added). These allegations are not sufficient to raise "more than a sheer possibility that a defendant has acted unlawfully." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017). The court therefore **WILL DENY** Ms. Mills's motion to amend her complaint to add these allegations and **WILL DISMISS** any claim of sex discrimination, in violation of Title VII, **WITHOUT PREJUDICE**.

### b.  Retaliation

Both Title VII and the ADA prohibit an employer from retaliating against an employee for, as relevant to this case, "oppos[ing] any act or practice made unlawful" by the ADA or Title VII. 42 U.S.C. §§ 12203(a), 2000e-3(a). Ms. Mills

asserts that she engaged in protected conduct under these statutes by confronting a coworker about his poor treatment of his wife and his derogatory comments about Pride Month and by opposing MBUSI's violations of the Fair Labor Standards Act. (Doc. 11 at 4). But those activities are not protected conduct under Title VII or the ADA. Neither statute requires a person to treat his spouse respectfully or to support Pride Month. *See* 42 U.S.C. §§ 2000e-2(a), 12112(a). And the Fair Labor Standards Act is codified in a different title of the U.S. Code, so Title VII and the ADA do not protect opposing acts or practices made unlawful by it. *See* 42 U.S.C. § 12203(a) (protecting opposition to an "act or practice made unlawful by *this chapter*") (emphasis added); *id.* § 2000e-3(a) (protecting opposition to "any practice made an unlawful employment practice by *this subchapter*") (emphasis added). The court therefore **WILL DENY** the motion to amend the complaint to add these allegations and **WILL DISMISS** all claims of retaliation under Title VII and the ADA **WITHOUT PREJUDICE**.

   3.  Conclusion

For the reasons set out in this order and in the court's order to show cause (doc. 8), the court **WILL DENY** the motion to amend and **WILL DISMISS** all claims of sex discrimination under Title VII and retaliation under Title VII and the ADA.

The court will enter a separate order consistent with this opinion.

8

**DONE** and **ORDERED** this July 13, 2026.

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE